[Crim. No. 989.   Fourth Dist.   July 13, 1955.]

THE PEOPLE, Appellant, v. ROBERT CHASE MISNER, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, Lowell E. Lathrop, District Attorney (San Bernardino), and Edward F. Taylor, Deputy District Attorney, for Appellant.

Julius J. Novack for Respondent.

MUSSELL, J.—Defendant was charged with the crime of violation of section 480 of the California Vehicle Code. It was alleged in the information that Robert Chase Misner "On or about the 1st day of October, 1954, in the said County of San Bernardino, State of California, being then and there the driver of a vehicle upon a public highway, which said vehicle was then and there involved in an accident resulting in injury to a human being, to wit: Wayne Edwin Ledyard, did then and there wilfully, unlawfully and feloniously fail to fulfill the requirements of section 482(a) of the California Vehicle Code."

Section 480 of the Vehicle Code provides as follows:

"*Accidents Involving Death or Personal Injuries.* The driver of any vehicle involved in an accident resulting in injury to . . . or death of any person shall immediately stop such vehicle at the scene of such accident and shall fulfill the requirements of section 482(a) hereof and any person failing to stop or to comply with said requirements under such circumstances is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the State prison for not less than one year nor more than five years or in the county jail for not to exceed one year or by fine of not to exceed five thousand dollars or by both.

Section 482, subdivision (a), of said code provides as follows:

"[*Accident resulting in injury to or death of person.*] The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his name, address and the registration number of the vehicle he is driving, the name of the owner, and shall upon request and if available exhibit his operator's or chauffeur's license to the person struck or the driver or occupants of any vehicle collided with or shall give such information and exhibit such license to any traffic or police officer at the scene of the accident and shall render to any person injured in such accident reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician,

surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.''

Defendant was arraigned in the superior court and moved to dismiss the information upon the ground that he had been committed without reasonable or probable cause. The motion to dismiss was granted, the court holding that ''The transcript does not show or give reasonable suspicion of an offense having been committed.'' The People appeal from this order.

The transcript of the preliminary examination shows that at about 10 o'clock p. m. on October 1, 1954, W. E. Ledyard was driving his automobile in an easterly direction on Kendall Drive near the city of San Bernardino. Kendall Drive runs generally east and west and intersects Devil's Canyon Road, which runs north and south. When Ledyard was about 200 feet from this intersection he observed a car approaching it from the south on Devil's Canyon Road. The driver of the northbound car did not stop his car at the boulevard stop sign as he entered the intersection and his car struck the eastbound car on the right side. Ledyard's eastbound car came to rest facing in a westerly direction in the westbound lane of Kendall Drive and at a point approximately 100 feet east of the intersection. Ledyard was thrown to the floor boards of his car, his back was injured and his head was cut. He crawled out of the door on the righthand side of his car and went over to the other car involved in the collision. He observed that the motor was still running in the Chrysler sedan and that there was no driver in it. He turned off the ignition, and then noticed a Ford automobile on the south side of Kendall Drive and a man standing beside it. He talked with this man (W. B. Murrel) and told him that the fellow who was driving the Chrysler was probably thrown out and that they should walk around the car a couple of times to make sure. Ledyard testified that they circled the Chrysler and found no one there; that he walked back to his car; and that he was not ''feeling too good at the time.''

Walter Baker Murrel, who was a passenger in the Ford car, testified that he observed the two cars collide; that he saw the Chrysler ''run the stop sign''; that he saw Ledyard ''cut the switch off at the Chrysler''; that he and Ledyard walked back to the Chrysler to see if they could find the driver; that he observed a man, whom he could not identify, lying on the

ground about 20 feet from the Chrysler; that this man "got up and took off across the field," apparently staggering.

Sergeant Hickey of the California Highway Patrol testified that he saw the defendant on October 2, 1954, in the Highway Patrol office in San Bernardino; that Misner asked him if the form on the office counter was the report he had to fill out to report an accident; that he told Misner it was and at the same time asked him his name and the location of the accident; that Misner then told him that the accident had occurred at Devil's Canyon Road and Kendall Drive and that his name was Robert Misner; that he told Misner that in addition to the report which Misner had begun to fill out that he, Hickey, had some information he wanted to obtain from him for their own police report; that he asked Misner for his driver's license and also asked him how the accident occurred; that Misner stated he was driving north on Devil's Canyon Road and that his brakes had failed when he applied them at the stop sign at the entrance to Kendall Drive; that he asked him about running away from the accident and Misner stated that he "had not run, he had walked"; that the information he received from Misner was written into a Highway Patrol report separate from that written out by Misner.

Appellant contends that the order of the trial court dismissing the information is unsupported by the record. We are in accord with this contention.

In *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183, 184 [281 P.2d 250], the court said:

"Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344].) An indictment will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 56, 59 [216 P.2d 859]; *cf. Greenberg* v. *Superior Court,* 19 Cal.2d 319, 322 [121 P.2d 713].)"

In *People* v. *Wisecarver,* 67 Cal.App.2d 203, 209 [153 P.2d 778], it was held:

"In a criminal action the sovereign has the same right to have the truth of its accusation against the defendant determined by a trial court, to the same extent and in the same degree as has the accused. (*People* v. *Stoll,* 143 Cal.

689, 696 [77 P. 818]; *People* v. *Pruitt*, 55 Cal.App.2d 272, 275 [130 P.2d 767]; *People* v. *Borrego*, 211 Cal. 759, 765 [297 P. 17].) It is as much a technical breach of the rules of procedure to deny the People a trial upon an information based upon such facts as might reasonably convince a jury of defendant's guilt as it would be to convict a defendant upon the mere filing of an indictment. It is the duty of the magistrate to commit the accused 'if it appears from the examination that a public offense has been committed.' The question of guilt is utterly one for the determination of the superior court. (Pen. Code, § 872.)''

■ Applying the rules set forth in the foregoing decisions it is apparent that there was ample evidence to support the information and that as a result, the order setting it aside must be reversed. (*People* v. *Platt*, 124 Cal.App.2d 123, 134 [268 P.2d 529].) Misner was the driver of a vehicle involved in an accident resulting in injury to another driver (Ledyard) and failed to comply with the requirements of section 482, subdivision (a), of the Vehicle Code. ■ In *People* v. *Green*, 96 Cal.App.2d 283, 288 [215 P.2d 127], this court held that the purpose of the ''hit and run'' statute is to prevent the driver of an automobile from leaving the scene of an accident in which he participates or is involved without proper identification and to compel necessary assistance to those who have been injured.

■ It is the contention of respondent that there was no evidence other than the admission of Misner to officer Hickey to show that respondent was the driver of the Chrysler automobile and that the testimony of the officer concerning respondent's admission that he was the driver was inadmissible under the provisions of section 488 of the Vehicle Code. However, as was said in *Stroud* v. *Hansen*, 48 Cal.App.2d 556, 559, 560 [150 P.2d 102]:

''. . . Section 488 provides that no such report shall be used as evidence in any trial arising out of such accident. But it was not a report so provided to be made that was offered but rather the testimony of the officer as to the statements made by the driver to him. No evidence of the facts that occurred at the time of a vehicular accident is privileged. Only those reports are confidential which are so made by section 488 of the Vehicle Code. To make a statement privileged and inadmissible it must come within the express terms of the section. (*Dwelly* v. *McReynolds*, 6 Cal.2d 128, 131 [56 P.2d 1232]; *Inouye* v. *McCall*, 35 Cal.App.2d

382

634, 636 [96 P.2d 386].)'' See also *Carroll* v. *Beavers*, 126 Cal.App.2d 828, 836 [273 P.2d 56].

In the Stroud case, as here, it was not a report which was received in evidence but rather the testimony of the officer that Misner had told him he was driving the Chrysler at the time of the accident.

The order dismissing the information is reversed.

Barnard, P. J., and Griffin, J., concurred.