[Crim. No. 1050.   Fourth Dist.   May 31, 1956.]

THE PEOPLE, Appellant, v. ADAM ACOSTA, Respondent.

*Assigned by Chairman of Judicial Council.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, James Don Keller, District Attorney, and Jack R. Levitt, Deputy District Attorney, for Appellant.

Thomas Whelan for Respondent.

GRIFFIN, J.—After a preliminary hearing defendant and respondent was charged by information with the crime of having in his possession a narcotic, without describing it. After information filed in the superior court, defendant's counsel moved to set it aside under section 995 of the Penal Code and the motion was granted. The People appealed.

The question before the trial court was whether defendant was illegally committed, or committed without reasonable or probable cause. It is defendant's claim that the principal evidence against him at the preliminary examination was obtained in violation of his constitutional guaranty, by unreasonable search and seizure; that the search warrant was issued without a sufficient showing of probable or reasonable cause; and accordingly was invalid, citing such authority as *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905], and subsequent opinions on that subject. See also *Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36]; and sections 1524, 1525 and 1526 of the Penal Code.

The testimony before the committing magistrate, made a part of the evidence before the reviewing court on this motion, shows generally that on the night of July 8, 1955, four police officers went to a two-bedroom residence at 1718 Newton Avenue in San Diego. One officer was armed with a search warrant issued that day. In an affidavit of Officer Myrann it is alleged:

"Personally appeared before me this 8th day of July, 1955, A. N. Myrann, who on oath makes complaint and

deposes and says: That on the 7th day of July, 1955, in the County of San Diego, State of California, the crime of Possession of Narcotic was committed, to wit: By ADAM ACOSTA, who then and there did unlawfully have in his possession a quantity of heroin.'' (It will be noted that this allegation was not made upon information and belief.)` It then follows in another paragraph:

''That he has been told by an informant, whose name cannot be revealed without endangering the safety of said informant, that he, the said informant, has seen a quantity of heroin in the possession of Adam Acosta at 1718 Newton Avenue, San Diego, California, and had purchased heroin from said Adam Acosta on July 7, 1955; that said Adam Acosta also on said day had in his possession paraphernalia for the unlawful administration of narcotics intravenously, including a spoon, cotton, hypodermic needle, and syringe. That your affiant believes and therefore alleges that said Adam Acosta still has a quantity of heroin and the above-described paraphernalia in his possession at 1718 Newton Avenue. . . .''

A search warrant was issued upon this showing, commanding the officer to search the person of Acosta and the premises indicated for the following property: ''Heroin and spoons, syringes, hypodermic needles and cotton,'' and ''if found, bring them to court.'' On arrival at the premises Officer Schenck knocked at the front door. It was answered by a woman whom he believed to be the mother of Adam Acosta. He showed her his badge and search warrant and asked her if Adam was at home. She did not answer him but stepped back away from the door and Schenck went in. He saw the defendant in the kitchen and searched his person and showed him the search warrant. He asked him which was his bedroom and defendant pointed to the back bedroom. The officer then told the defendant to sit on the couch and he then asked the defendant's mother which was the defendant's bedroom and she pointed to the front bedroom. The officers went into the front bedroom and commenced to search. Behind the window molding a number of articles were found, including hand-rolled marijuana cigarettes, a dirty piece of cloth wrapped around an eyedropper, a needle, a spoon, cotton, an eyedropper bulb in which there was a needle, and a bottle containing marijuana seeds and pieces of paper. Apparently, defendant ran out of the house about this time, left, and subsequently surrendered to the police. The cigarettes were

identified by a competent witness as containing marijuana, and the bottle contained marijuana seeds and particles. There was residue of heroin in the spoon and in one piece of paper, and the residue of opium alloy in another piece of paper. Objection was made at the preliminary hearing to the introduction in evidence of the marijuana, because the search warrant did not call for such a search, but only for heroin and the other paraphernalia mentioned. Further objection was made that the affidavit for search warrant was insufficient because it was based on hearsay evidence of what someone told the officer, without naming the person and without having a supporting affidavit of anyone purporting to know the facts, as contemplated by section 1526 of the Penal Code. It was stipulated at such hearing that the judge issued the search warrant, based on the affidavit, and no other witnesses appeared before the judge in regard to its issuance. It appears that the prosecutor demanded that defendant, in connection with his motion to withdraw the evidence, claim ownership of the seized property before he could invoke the doctrine of unlawful search and seizure, citing such authority as *United States* v. *Lee Hee,* 60 F.2d 924, 926; and *Lee On* v. *Long,* 37 Cal.2d 499 [234 P.2d 9]. The People contend on this appeal: (1) that the warrant was valid and the search proper; (2) that there was sufficient consent to the entry and search of the premises without a warrant; (3) that the search and seizure of the contraband was contemporaneous with the lawful arrest; (4) that there was probable cause for the arrest and search; and (5) that the defendant may not challenge the validity of the search and seizure while disclaiming ownership. This last contention was held untenable in *People* v. *Kitchens,* 46 Cal.2d 260, 264 [294 P.2d 17].

Article I, section 19 of the California Constitution provides that no search warrant shall issue "but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." The burden to establish the invalidity of the search warrant was on defendant. (*United States* v. *Goodwin,* 1 F.2d 36.)

In determining probable cause for issuance of a search warrant the court is not called upon to determine whether the offense charged was in fact committed, but is concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit for the belief that the law was being violated upon the premises to be searched. If apparent facts set out in the affidavit were such that a

reasonably prudent man would be led to believe that there was a commission of the offense charged, there is reasonable cause. (*Carney* v. *United States*, 163 F.2d 784, 786 [certiorari denied, 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 400].)

The courts of this state have defined what constitutes probable cause under various conditions. *People* v. *Kilvington*, 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73], held that there is probable cause for arrest when there is such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty of the offense charged.

In *Cook* v. *Singer Sewing Machine Co.*, 138 Cal.App. 418, 422 [32 P.2d 430], it was held that an arrest without a warrant was justified where the suspicion of guilt is founded on relevant facts, circumstances or credible information conveyed to the officer, and that he is not required to have definitely and finally established the truth of the facts or the certainty of the information upon which he relies. (See also *Lorenson* v. *Superior Court*, 35 Cal.2d 49, 56 [216 P.2d 859]; *Bompensiero* v. *Superior Court*, 44 Cal.2d 178 [281 P.2d 250]; *People* v. *Misner*, 134 Cal.App.2d 377 [285 P.2d 938]; *People* v. *Platt*, 124 Cal.App.2d 123, 134 [268 P.2d 529]; *People* v. *Hupp*, 61 Cal.App.2d 447 [143 P.2d 84]; *United States* v. *Li Fat Tong*, 152 F.2d 650; and *People* v. *Boyles*, 45 Cal.2d 652 [290 P.2d 535].)

It is true there are federal authorities holding that a search warrant may not be issued upon hearsay evidence. (*United States* v. *Goodwin*, 1 F.2d 36; *United States* v. *Vatune*, 292 F. 497; *United States* v. *Lai Chew*, 298 F. 652.)

In *People* v. *Cahan, supra*, it was said that the state courts would not necessarily be bound by the federal rules in the right to conduct reasonable searches and seizures or to secure warrants. *Willson* v. *Superior Court, supra*, stated the general rule applicable in this state in this respect. It is there said:

"Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt. . . . Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency . . . an arrest may not be based solely on such information . . . and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. . . . In some

cases the identity of, or past experience with, the informer may provide such evidence . . . and in others it may be supplied by similar information from other sources or by the personal observations of the police.''

█  Here, it is argued that the affidavit upon which the search warrant issued contained only hearsay evidence of an informer. The affidavit cannot be so construed. It makes a positive statement of the affiant officer that on July 7th, defendant committed the crime of possession of narcotics and that defendant did then and there unlawfully have in his possession a quantity of heroin. He then further alleges that he was told by an informant, whose name and identity were known to the officer, that defendant was on that day in possession of and had sold heroin at said described premises. Under the Willson case this showing was sufficient. (See also *People* v. *Sayles,* 140 Cal.App.2d 657 [295 P.2d 579]; *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6].) Accordingly, only a question of law arose as to its sufficiency. (*People* v. *Gorg,* 45 Cal.2d 776, 780 [291 P.2d 469].) On an examination of the testimony before the committing magistrate on such a motion as the one presented to the trial court, no findings of fact by the trial court are proper nor can they be considered.

In *Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23], it was held:

''Where evidence before the magistrate bearing on the issue of illegality of a search or seizure is in conflict or susceptible of conflicting inferences or consists only of the testimony of prosecuting witnesses, the trial court in ruling on a motion to set aside the information will frequently not be in a position to make a final determination as to the admissibility of the evidence, and accordingly the information should not be set aside on the ground that the essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion, since in such cases the ultimate decision on admissibility can be made at the trial on the basis of all evidence bearing on the issue.'' (See also *People* v. *Farrara,* 46 Cal.2d 265 [294 P.2d 21].)

The search warrant based upon the facts shown was properly issued and there was a sufficient compliance with section 1524 et seq. of the Penal Code. (*Collins* v. *Lean,* 68 Cal. 284 [9 P. 173].)

█  Accordingly, the only remaining question is whether the officers were justified in taking the marijuana cigarettes

along with the heroin and other paraphernalia indicated and whether they were properly received in evidence in support of the charge that defendant was found in possession of "a narcotic." These articles were all found in the same place and under conditions indicating they were all being used by defendant in the commission of the crime of which he was charged. The taking of the marijuana was an incident to the arrest. (*People* v. *Rios,* 46 Cal.2d 297 [294 P.2d 39].)

It is true that the affidavit indicates that defendant was, on July 7th, in possession of a quantity of heroin which concededly, like marijuana, is a narcotic, the unlawful possession of which constitutes a felony. It is also alleged that the heroin, together with the paraphernalia described, was used for the unlawful administration of *narcotics* intravenously. The defendant was arrested for and charged with possession of a *narcotic,* without distinguishing its derivative form. The warrant of seizure authorized the search made. *People* v. *Berger,* 44 Cal.2d 459 [282 P.2d 509], relied upon by defendant, is factually dissimilar. Whether the arrest was made before or after the search and seizure was immaterial. (*People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531]; *People* v. *Martin,* 45 Cal.2d 755 [290 P.2d 855].)

In *In re Dixon,* 41 Cal.2d 756, 761-762 [264 P.2d 513], it was held that where police officers lawfully entered petitioner's apartment on his invitation, it was proper for them, as an incident to lawful arrest, to search the premises and seize articles which they believed were being used by him in the commission of the crime for which he was arrested.

In *Taylor* v. *Fine,* 115 F.Supp. 68, 70, it was said [footnote 1]: "Incidental to a legal arrest whether with or without a warrant, the officers may conduct a reasonable incidental search" citing cases. And in *United States* v. *Bell,* 48 F.Supp. 986, 995, it is said that:

"Incidental to an arrest, there may be seizure on the premises of articles, books and papers which are the instruments, fruits, or evidence of the crime or connected with its commission or which supply proof relating to the transaction out of which it arose." And that the officers "had a right without a warrant contemporaneously to search the place in order to find and seize the *things used to carry on the criminal enterprise.*"

See also *Carney* v. *United States,* 163 F.2d 784; *United States* v. *Vatune,* 292 F. 497; *United States* v. *Camarota,* 278

F. 388; *United States* v. *Willis,* 85 F.Supp. 745; *Taylor* v. *Fine,* 115 F. Supp. 68, 70; *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6]; *People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852]; *People* v. *Martin,* 45 Cal.2d 755 [290 P.2d 855]; *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57]; *People* v. *Beard,* 46 Cal.2d 278 [294 P.2d 29]; *People* v. *Caritativo,* 46 Cal.2d 68 [292 P.2d 513]; *People* v. *Dixon,* 46 Cal.2d 456, 459 [296 P.2d 557]; *In re Dixon,* 41 Cal.2d 756, 761-762 [264 P.2d 513]; Fricke, Criminal Procedure, Fourth edition, page 45; 79 C.J.S. Search and Seizure, section 74, page 867, and section 1529, Penal Code.

Order reversed.

Barnard, P. J., and Mussell, J., concurred.